# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LORRIEANN ROSEMEIER, | No. 4:22-CV-00659 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| COLLISION INDUSTRIES, INC., d/b/a THE COLLISION CENTER, | |
| Defendant. | |

## MEMORANDUM OPINION

**FEBRUARY 8, 2023**

This case concerns a property dispute between a dead man's widow and his former company. His widow, who assumed sole ownership of the subject property following his death, seeks to eject the company from the property, which the company has leased for many years, well before the man's passing. In response, the company argues that it should not only be permitted to continue operating on the property, but it should be recognized as the property's rightful owner. Pointing to its various contributions to the property over the years, the company believes it has assumed ownership of the property via a constructive trust. The Court disagrees.

I.  **BACKGROUND**

On November 18, 2019, Robert Rosemeier passed away.[1] At the time of his death, he and his wife owned several investment properties in Clinton County, Pennsylvania that they leased for commercial use.[2] The Rosemeiers leased one such property—located at 229 South Hanna Street in Lock Haven, Pennsylvania—to the Defendant, Collision Industries, Inc. ("Collision Center").[3] Upon Mr. Rosemeier's passing, ownership of the property transferred to his wife, Plaintiff LorrieAnn Rosemeier.[4]

In his will, Mr. Rosemeier named the president of Collision Center, Stephen Poorman, trustee and executor of his estate.[5] In this capacity, Poorman quickly acted to secure advantage for Collision Center in the wake of his friend's death. Poorman rejected multiple requests by Mrs. Rosemeier to deliver possession and control of the property.[6] Instead, as executor of Mr. Rosemeier's estate, he entered into a land lease agreement with his company, leasing the property to Collision

---

[1] Doc. 1 (Compl.) ¶ 8; Doc. 22 (Answer & Counterclaim) ¶ 8 (admitted in relevant part).
[2] Doc. 1 (Compl.) ¶ 7; Doc. 22 (Answer & Counterclaim) ¶ 7 (admitting the allegation "in part"; denying Mrs. Rosemeier's "attempts to characterize the ownership of the premises described in the deed . . . as a matter of law to be determined by [this Court]").
[3] Doc. 1 (Compl.) ¶¶ 2, 7; Doc. 22 (Answer & Counterclaim) ¶¶ 2, 7.
[4] Doc. 1 (Compl.) ¶ 8; Doc. 22 (Answer & Counterclaim) ¶ 8 (denying the relevant "averments contained in Paragraph 8 of the Complaint" as "conclusions of law").
[5] Doc. 1 (Compl.) ¶ 9; Doc. 22 (Answer & Counterclaim) ¶ 9 (admitted).
[6] Doc. 1 (Compl.) ¶ 11; Doc. 22 (Answer & Counterclaim) ¶ 11 (admitting that Collision Center "has not ceded possession of the premises" to Mrs. Rosemeier; denying that Mrs. Rosemeier "has a legal right to possession of the premises," for that constitutes "a conclusion of law").

Center at a rate of $605.00 per month.[7] Further, the lease vests Collision Center with an "irrevocable" option to purchase the property for $150,000.00, which can be exercised at any time.[8]

On February 3, 2020, Mrs. Rosemeier filed an emergency petition for special injunction in the Court of Common Pleas of Clinton County, seeking a declaration that Poorman had no authority to enter into the land lease agreement because the property was never part of Mr. Rosemeier's estate.[9] The court agreed with Mrs. Rosemeier, ruling on June 10, 2020, that the property passed automatically to Mrs. Rosemeier upon her husband's death.[10]

Despite this ruling, Poorman persists in his refusal to deliver possession and control of the property to Mrs. Rosemeier, instead providing her with monthly checks of $605.00 to cover the cost of rent, in accordance with the land lease agreement.[11] As such, Mrs. Rosemeier initiated suit in this Court on May 4, 2022.[12] She filed a two-count complaint alleging ejectment (Count I) and unjust enrichment (Count II).[13]

---

[7] Doc. 1 (Compl.) ¶¶ 12, 16; Doc. 22 (Answer & Counterclaim) ¶¶ 12, 16 (admitting that the attached document "is a true and correct copy of a Lease" and that it made "the $605.00 monthly lease payment"); *see also* Doc. 1-2, Ex. 2 (Dec. 11, 2019, Land Lease Agreement) at 1.
[8] Doc. 1-2, Ex. 2 (Dec. 11, 2019, Land Lease Agreement).
[9] *See* Doc. 1-3, Ex. 3 (June 10, 2020, Pa. Comm. Pl. Order & Opinion).
[10] *Id*. at 4.
[11] Doc. 1 (Compl.) ¶¶ 11–12, 16; Doc. 22 (Answer & Counterclaim) ¶¶ 11–12, 16.
[12] Doc. 1 (Compl.).
[13] *Id*.

In response, Collision Center filed its Answer & Counterclaim, in which it responded to Mrs. Rosemeier's allegations and argued that the Court should grant Collision Center ownership of the property under a theory of constructive trust.[14] Specifically, Collision Center alleges that it "spent hundreds of thousands of dollars" maintaining and upgrading the building on the subject property and has "paid all real estate taxes relative to the premises through 2021."[15] Conversely, Mrs. Rosemeier "has not contributed to the construction, maintenance, or upgrading of the premises in any manner."[16] As such, Collision Center contends, awarding Mrs. Rosemeier ownership and possession of the property "would unjustly enrich [her] and would be contrary to the interest of justice."[17] Instead, Collision Center asks the Court to "find that a constructive trust has been created concerning the premises" and order Mrs. Rosemeier to "transfer any and all interests she may have in the [property] to [Collision Center]."[18]

On August 24, 2022, Mrs. Rosemeier filed a motion to dismiss Collision Center's Counterclaim.[19] That motion has been fully briefed and is now ripe for disposition.[20]

---

[14] Doc. 22 (Answer & Counterclaim).
[15] *Id.* ¶¶ 43, 47.
[16] *Id* ¶ 49.
[17] *Id.* ¶ 50.
[18] *Id.* ¶¶ 51, 53.
[19] Doc. 24 (Mot. to Dismiss Counterclaim).
[20] *See* Doc. 25 (Rosemeier Br.); Doc. 28 (Collision Center Opp.).

## II. LAW

Courts evaluate "a motion to dismiss a counterclaim under the same standard as a motion to dismiss a complaint."[21] Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a counterclaim, in whole or in part, if the defendant fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[22] and *Ashcroft v. Iqbal*,[23] to survive a motion to dismiss, a counterclaim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[24] The United States Court of Appeals for the Third Circuit has instructed that under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a counterclaim must take three steps: (1) take note of the elements required to plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) assume the veracity of all well-pleaded factual allegations and then determine whether they plausibly give rise to an entitlement to relief.[25]

---

[21] *Mr. Sandless Franchise, LLC v. Karen Cesaroni LLC*, 498 F. Supp. 3d 725, 732 (E.D. Pa. 2020) (citing *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 826 (3d Cir. 2011)).
[22] 550 U.S. 544 (2007).
[23] 556 U.S. 662 (2009).
[24] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[25] *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

## III. ANALYSIS

In her motion to dismiss the Counterclaim, Mrs. Rosemeier argues that Collision Center's claim that it possesses, via a constructive trust, ownership of the Rosemeier property "not only falls flat, but it borders on the absurd."[26] The Court typically views such assertions with skepticism; on this, however, the Court agrees with Mrs. Rosemeier.

Under Pennsylvania law, "[a] constructive trust arises when a person holding title to property is subject to an equitable duty to convey it to another on the ground he would be unjustly enriched if he were permitted to retain it."[27] Generally, to maintain a claim for unjust enrichment, a party must allege "(1) benefits conferred on one party by another; (2) appreciation of such benefits by the recipient; and (3) acceptance and retention of these benefits in such circumstances that it would be inequitable for the recipient to retain the benefits without payment of value."[28] But Pennsylvania courts have held that "the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract, regardless of how harsh the provisions of such contracts may seem in the light of subsequent happenings."[29]

---

[26] Doc. 25 (Rosemeier Br.) at 1.
[27] *Nagle v. Nagle*, 799 A.2d 812, 819 (Pa. Super. 2002) (citation omitted).
[28] *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 277 (3d Cir. 2007).
[29] *Grudkowski v. Foremost Insurance Co.*, 556 F. App'x 165, 169–70 (quoting *Wilson Area School District v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006)).

Further, when considering whether to recognize the existence of a constructive trust, Pennsylvania courts advise that a finding of unjust enrichment typically requires "circumstances evidencing fraud, duress, undue influence, or mistake."[30] Simply failing to appreciate possible negative externalities or willfully contributing to another's property without compensation does not establish a constructive trust.[31]

First, Collision Center cannot maintain a claim against Mrs. Rosemeier based on the doctrine of unjust enrichment because the relationship between the two is founded upon an express contract—namely, a lease. As the Court of Common Pleas of Clinton County ruled in June 2020, Mrs. Rosemeier became the sole owner of the subject property upon her husband's death.[32] And Collision Center effectively concedes that its continued access to and use of the property is pursuant to the December 2019 land lease agreement, in which Collision Center agreed to lease the property for $605.00 a month.[33] Accordingly, Collision Center's relationship with Mrs. Rosemeier—as well as its connection to the subject

---

[30] *Nagle*, 799 A.2d at 819 (citation omitted).
[31] *See Yohe v. Yohe*, 353 A.2d 417, 420 (Pa. 1976) (husband mistakenly signing away deed to his wife did not establish a constructive trust because the wife "used no subterfuge or fraud to persuade [her husband] to sign the deed"; he was simply "not being prudent enough to read the deed before signing it"); *Roberson v. Davis*, 580 A.2d 39 (Pa. Super. 1990) (finding no constructive trust over the defendant's home—in which he lived with the plaintiff, his partner—based on the plaintiff's relationship with the defendant and contributions to the property (i.e., buying groceries and maintaining the household)).
[32] Doc. 1-3, Ex. 3 (June 10, 2020, Pa. Comm. Pl. Order & Opinion).
[33] *See* Doc. 22 (Answer & Counterclaim) ¶¶ 16 (alleging that it has made "the $605.00 monthly lease payment to Plaintiff"), 27 (alleging that it "had paid . . . a monthly amount consisting of reasonable rent for the building at issue").

property—is strictly contractual in nature. The equitable doctrine of unjust enrichment is therefore "inapplicable."[34]

Second, Collision Center has not alleged that Mrs. Rosemeier obtained ownership of the property through fraud or some other improper means. Instead, Collision Center predicates its constructive trust claim on various contributions it, as a tenant, made to the property: Collision Center "has constructed a state-of-the-art collision center, maintained said building, upgraded the building, and repaired the building over the past twenty-five years," whereas Mrs. Rosemeier "has not paid a dime toward the maintenance, repairs, or upkeep of the building" and "has not contributed toward the real estate taxes for the property."[35]

Even if true, that does not serve as viable grounds for establishing a constructive trust. As Mrs. Rosemeier notes, Collision Center is effectively arguing that "a tenant who invests heavily into a rented property should obtain ownership due to those efforts."[36] Collision Center presents no legal authority supporting this position, and, unsurprisingly, the Court has found none, as the position would seem wholly incompatible with prevailing property law.

---

[34] *Grudkowski*, 556 F. App'x at 169–70.
[35] Doc. 28 (Collision Center Opp.) at 4–6 (cleaned up).
[36] Doc. 25 (Rosemeier Br.) at 11.

## IV.  CONCLUSION

Collision Center's counterclaim cannot be squared with either contract law or the prevailing legal standards governing the landlord-tenant relationship. Because the relationship between Mrs. Rosemeier and Collision Center is governed by contract, Collision Center cannot maintain a claim predicated on the doctrine of unjust enrichment. Further, absent evidence that Mrs. Rosemeier assumed ownership of the property through fraud, deceit, or some other improper means, Collision Center cannot claim ownership by constructive trust. By all accounts, Collision Center is simply a tenant. And tenants do not assume ownership of the properties they rent by making contributions to them. This legal deficiency goes to the heart of Collision Center's counterclaim and cannot be remedied with additional factual pleadings. Accordingly, the counterclaim is dismissed with prejudice.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge
